**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
ALLAN B. MENDELSOHN, as Chapter 7
Trustee of HIRSCH ELECTRIC CO., INC.,
DEBTOR

              Appellant,

       -against-

THE PORT AUTHORITY TRANS-HUDSON
CORPORATION and THE PORT
AUTHORITY OF NEW YORK AND NEW
JERSEY

            Appellees.
---------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
11-cv-03820 (ADS)

<u>**APPEARANCES:**</u>

**The McDonough Law Firm LLP**
*Attorneys for the Appellant*
145 Hugenot Street
Suite 320
New Rochelle, NY 10801
      By: Jeffrey Peske, Esq., Of Counsel

**Margaret M.T. Finucane, Esq.**
*Attorneys for the Appellees*
The Port Authority of New York & New Jersey
225 Park Avenue South
New York, NY 10003

**SPATT, District Judge**.

      In this claim for damages incurred due to the alleged breach of a contractual agreement

by the Appellees, the Appellant has commenced the present appeal from a judgment of a

Bankruptcy Court granting a summary judgment motion filed by the Appellees. The motion is

based upon the alleged failure to give proper notice of the Appellant's claims to the Port

Authority Trans-Hudson Corporation and the Port Authority of New York and New Jersey

pursuant to a contract between the parties. For the reasons set forth below, the Court finds that the bankruptcy court's determination was not erroneous and the Court affirms the dismissal.

## I. BACKGROUND

On November 30, 1988, Hirsch Electric Co. Inc., (the "Debtor" or "Hirsch") entered into a construction contract titled "Hackensack River Bridge Rehabilitation" (the "Contract") with the Port Authority Trans-Hudson Corporation and the Port Authority of New York and New Jersey (the "Appellees" or "PATH"). Pursuant to the Contract, Hirsch was to perform electrical work in connection with the rehabilitation of the Hackensack River Bridge in New Jersey (the "Project"). The Contract contained a notice provision, Section 19, which provides:

> No claim against PATH shall be made or asserted in any action or proceeding at law or in equity, and the Contractor shall not be entitled to allowance of such claim, unless the Contractor shall have complied with all requirements relating to the giving of written notice and of information with respect to such claim as provided in this numbered clause.

(R:RA-000120.) Further, the Contract explicitly states that this notice requirement is a condition precedent:

> The failure of the Contractor to give such written notice and information as to any claim shall be conclusively deemed to be a waiver by the Contractor of such claim, such written notice and information being conditions precedent to such claims.

(R:RA000120.) The Section continues to provide the requirements as to the giving of written notice and information with respect to claims against PATH as follows:

1. In the case of any claims for Extra Work, extension of time for completion, idle salaried men and equipment, or any other matter for which requirements are set forth elsewhere in this Contract as to notice and information, such requirements shall apply.
2. In the case of all other types of claim, notice shall have been given to the Engineer, personally, as soon as practicable, and in any case, within 48 hours, after occurrence of the act, omission, or other circumstances upon which the claim is or will be based, stating as fully as practicable at the time all information relating thereto. Such information shall be supplemented with

any further information as soon as practicable after it becomes or should become known to the Contractor, including daily records showing all costs which the Contractor may be incurring or all other circumstances which will affect any claim to be made, which records shall be submitted to the Engineer, personally.

(R:RA000120.)

Section 8 of the Contract, entitled "Compensation for Emergency Delays," states that if the Contractor is specifically directed by the Engineer to suspend his operations or if the Contractor is specifically directed not to start his operations at a time stipulated, and the employees and equipment of the Contractor are kept idle at the construction site, the Contractor is entitled to increased compensation, but the Contractor must do the following:

give prompt written notice to the Engineer stating the reasons why he believes such payments should be made and shall moreover, furnish to the Engineer at the end of each day, a memorandum showing the name, payroll title, salary rate and employer of each of the workingmen, and description, owner and claimed rental rate for each item of equipment claimed to have been kept idle. Said notice and memorandum are for the purpose of enabling the Engineer to verify the Contractor's claim at the time. Accordingly, notwithstanding any other provisions hereof, the failure of the Contractor to furnish such notice and memorandum shall constitute a conclusive binding determination on his part that he is not entitled to compensation as provided herein and shall constitute a waiver by the Contractor of all claims for such payment, *such notice and memorandum being conditions precedent to payment under this numbered clause.*

(R:RA000107) (emphasis Added). The anticipated date of completion for the Contract was December 1990. However, the work was not completed until some time in late 1993 or early 1994.

On March 23, 1994, Hirsch filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"). The case was assigned to United States Bankruptcy Judge Robert E. Grossman. The proceeding was

3

subsequently converted to a Chapter 7 proceeding, and the Bankruptcy Court appointed Allan B. Mendelsohn (the "Trustee" or the "Appellant") as the Chapter 7 Trustee of Hirsch.

On October 6, 2009, Hirsch commenced an adversary proceeding against PATH. In particular, it sought (1) the balance allegedly owed for work performed on the Project pursuant to the Contract; and (2) damages incurred because of PATH's alleged breaches of the Contract. On August 11, 2010, the Trustee filed a motion for partial summary judgment to recover the balance under the Contract in the amount of $21,000, which was granted.

On August 20, 2010, PATH moved for summary judgment on the ground that Hirsch had failed to comply with the above stated notice provisions in the Contract, which was a condition precedent to recovery. The main thrust of the Appellees' motion for summary judgment was that the Trustee did not produce any evidence to demonstrate that the notice requirements in the Contract were met.

On September 14, 2010, the Trustee opposed PATH's motion for summary judgment. According to the Appellant, the original notice documents that Hirsch provided to PATH were destroyed during the attacks on the World Trade Center on September 11, 2001. Therefore, the Trustee attempted to offer secondary evidence to establish that Hirsch complied with the notice requirements in the Contract. (See Fed. R. Evid. § 1004(1) "Admissibility of Other Evidence of Content — An original is not required and other evidence of the content of a writing, recording, or photograph is admissible if: (1) all the originals are lost or destroyed, and not by the proponent acting in bad faith"). In particular, the Trustee included affidavits of: (1) Vincent Casey, Hirsch's general foreman at the Project, in which he affirmed that he authored many delay and extra work letters that were forwarded to PATH; and (2) Felix Hirsch, the president of Hirsch, in which he affirmed that written timely notice was given to the Appellees. However, copies of the

written notices that had been maintained by Hirsch could not be produced and were presumed to have been lost over the years.

In addition, the Trustee included in its opposition: (1) an internal memorandum dated January 28, 1991, prepared by PATH's Project Manager, which sets forth and summarizes eight major delays which were affecting Hirsch's work; (2) a letter from PATH to Hirsch dated April 2, 1991, which states "It has come to my attention that you may have several claims concerning work that was performed by you and not called for in your contract"; and (3) a letter from Hirsch to the Port Authority dated November 3, 1993, towards the end of completion of the construction, which states that he would seek to recover his company's additional costs of more than $1 million for the Project stemming from revisions, adjustments, and interruptions to its Contract.

On October 21, 2010, the Bankruptcy Court held a hearing on PATH's motion for summary judgment. At that time, Judge Grossman held that issues of fact existed regarding whether Hirsch complied with the Contract's notice provisions, and thus the motion for summary judgment was denied. In particular, based upon the secondary evidence outlined above, the Bankruptcy Court found that the prospect of Trustee's witnesses providing documents and testimony that might establish compliance with the notice provisions of the Contract warranted a need for additional discovery.

On April 15, 2011, after conducting depositions of the Trustee's key witnesses—Vincent Casey and Kenneth S. Harmelin, Hirsch's former comptroller—PATH filed a second motion for summary judgment on the same ground as the prior motion. In particular, PATH asserted that the Trustee's witnesses offered only conclusory and general statements that notice was given. Consequently, they were unable to provide any specific information regarding whether the

notices included certain information, such as relevant costs, as required under § 19 of the Contract.

The Trustee once again opposed the second summary judgment motion. Specifically, he pointed to: (1) Hirsch's deposition testimony where he stated that notice had been given, "probably" in writing to PATH; (2) Casey's deposition testimony where he affirmed that there were a number of written communications between Hirsch and PATH regarding the delays, as well as memoranda and weekly meetings; and (3) testimony by Harmelin, stating that letters were sent to PATH at the time of the delays, although costs had not been included because they were undetermined at the time.

On May 4, 2011, the Bankruptcy Court held a hearing on the pending motion for summary judgment. The parties acknowledged that Hirsch's compliance with the notice requirements was an essential threshold issue. At the hearing, Judge Grossman noted that because the Trustee claimed that documents Hirsch maintained which evidenced compliance with the notice requirements set forth in the Contract were lost or missing, it would consider secondary evidence to establish the existence of such notice documents. The Court scheduled a hearing to determine the narrow issue of whether the Trustee could establish compliance with the notice requirements set forth in the Contract based on oral testimony and documentary evidence. The Bankruptcy Court cautioned the Trustee that it was inclined to find that Hirsch had failed to comply with the specific notice requirements, and that it was the Trustee's burden to provide further probative evidence on the issue.

On May 24, 2011, at the second hearing, Hirsch, Casey, and Harmelin testified. Also, the Trustee offered various exhibits into evidence that he claimed satisfied the notice requirements of the Contract. However, none of the witnesses provided any further evidence for the Court to

consider, beyond what was elicited at their depositions. Hirsch's testimony provided clarification that none of the letters or written notices sent by him to PATH included any records or itemizations of costs incurred by the company, as required by the notice provisions in the Contract. Casey testified that he had no knowledge of any notices forwarded to PATH regarding delay costs incurred by Hirsch. Harmelin testified that Hirsch maintained all of its documents, including records of costs incurred as a result of the delays, but that the computer containing the information was now inoperable. More importantly, Harmelin's testimony at the hearing revealed for the first time the possible existence of a backup tape that could contain the lost or missing proof of compliance with the notice requirements. However, the Trustee never attempted to retrieve and secure the information on the backup tape, and stated that he believed the retrieval of the information would be costly, although he never made an inquiry to determine the actual cost.

On June 14, 2011, the Honorable Judge Robert E. Grossman issued Supplemental Findings of Fact and Conclusion of Law (the "Order") (R:RA000001-000013.) In particular, the Bankruptcy Court stated that "[b]ecause this case turns on whether Hirsch provided PATH with proper notice of its delay claims and the existence of such documents is crucial to the Trustee's case, the Trustee's failure to make every effort to retrieve and produce the documents located on the backup tape maintained by Hirsch raises serious questions about whether the Court may even consider secondary evidence regarding the notices." (R:RA000009.) Consequently, the Bankruptcy Court found that the Trustee had failed to exercise reasonable diligence in retrieving the documents on the backup tape and thus could not conclude that it was appropriate to consider secondary evidence.

Regardless, even if it was considered, the Bankruptcy Court determined that the secondary evidence was insufficient to show substantial compliance with the Contract's notice provisions. While the letters and memoranda reflected PATH's awareness that there were ongoing delays with respect to the project, Judge Grossman found that this documentation did not demonstrate Hirsch's intent to assert a claim for damages based on those delays, or the extent or amount of such damages. Even the November 3, 1993 letter, which advised that Hirsch would be seeking compensation for the delays and included a rough estimate of Hirsch's claim, did not satisfy the strict notice requirements set forth in the Contract, according to the Bankruptcy Court's decision. Judge Grossman noted that it was likely that Section 8's stricter notice requirements, which applies to delays caused solely by PATH, were applicable as opposed to the more lenient notice requirements contained in Section 19(2), as urged by Hirsch. However, under either provision, the Bankruptcy Court found that "Hirsch has not established that it provided notice of the delay claims within 48 hours of the occurrence of the act in question, or that Hirsch provided PATH with daily records of costs, which are both required under Section 19." (R:RA000011.)

In sum, the Order stated that Hirsch failed to prove that notice was given "as fully as practicable" or that it was supplemented "as soon as practicable after it becomes or should become known to the Contractor", pursuant to Section 19, or that Hirsch provided daily records of costs pursuant to Section 8. The Court held that only strict compliance with the notice provisions would be sufficient, and that the Trustee's reliance on "substantial compliance" with the notice requirements was misplaced. Based on these findings, the Bankruptcy Court granted PATH's motion for summary judgment dismissing the Hirsch complaint. The Court summarized its findings as follows:

consideration of secondary evidence may not be warranted because the Trustee
has failed to satisfactorily demonstrate that copies of the notice are lost or
missing. The few documents that have been introduced do not establish that
Hirsch satisfied the notice requirements set forth in Section 8 or Section 19 of the
Contract. Even if the oral testimony is considered, it is woefully insufficient to
establish that the notice requirements set forth in the Contract were met. For
these reasons, PATH's motion for summary judgment dismissing the complaint is
granted.

(RA-000013.)

On June 22, 2011, the Trustee filed a timely Notice of Appeal. The Appellant now

argues that the Bankruptcy Court: (1) should have considered the secondary evidence presented,

namely the witness testimony, in lieu of actual notices; (2) should have found "substantial

compliance" with the notice provisions to be sufficient, rather than "strict compliance"; and (3)

should not have required contemporaneous records to demonstrate Hirsch's costs of delays,

because it was impossible for Hirsch to segregate the costs attributable solely to the delay.

## II. DISCUSSION

### A. <u>Legal Standard of Review on a Bankruptcy Appeal</u>

Federal district courts have jurisdiction to hear appeals from final judgments, orders, and

decrees of bankruptcy judges. Fed. R. Bankr. P. 8013. The standard of review in a bankruptcy

appeal is plenary. <u>In re MarketXT Holdings Corp.</u>, 346 Fed App'x 744, 745 (2d Cir. 2009). The

reviewing court "review[s] the bankruptcy court decision independently, accepting its factual

findings unless clearly erroneous, but reviewing its conclusions of law de novo." <u>Ball v. A.O.

Smith Corp.</u>, 451 F.3d 66, 69 (2d Cir. 2006).

### B. <u>As to Whether it was an Error of Law for the Bankruptcy Court Not to Give Sufficient Weight to the Trustee's Secondary Evidence</u>

The first issue on appeal is whether it was an error of law, reviewed *de novo*, for the

Bankruptcy Court to not fully consider the Trustee's secondary evidence. The Appellant

contends that it was erroneous for the Bankruptcy Court to question the admissibility of certain secondary evidence it proffered because of the possible existence of duplicates of the original notices at issue.

However, the Court need not address the legal question of whether the existence of a duplicate of an original would preclude the admission of certain secondary evidence, such as affidavits and deposition testimony. This is because Judge Grossman expressly found that "[e]ven if the oral testimony is considered, it is woefully insufficient to establish that the notice requirements set forth in the Contract were met." Thus, it is apparent to the Court that despite the Bankruptcy Court's concerns about the admissibility of this secondary evidence, it was nevertheless considered. As the Appellees have contended, the Bankruptcy Court denied the initial motion for summary judgment based upon this evidence; reopened discovery to provide the Trustee with the opportunity to further develop such evidence; and held a hearing to fully understand and weigh the sufficiency of the secondary evidence. Judge Grossman undoubtedly considered and ultimately rejected this evidence as being insufficient. While he expressed concerns regarding the ultimate admissibility of this evidence in the Order at issue, this does not alter the fact that it was nevertheless considered. Therefore, any argument as to the Bankruptcy Court's failure to properly consider this secondary evidence is without merit.

Accordingly, the Court need not assess whether the Bankruptcy Court made an error of law regarding the consideration of secondary evidence.

**C.** **As to Whether it was an Error to Hold the Appellant to the Strict Notice Requirements**

The second issue on appeal is whether it was an error of law, reviewed *de novo*, for the Bankruptcy Court to hold the Trustee to the Contract's strict notice provisions. The Appellant contends that the Bankruptcy Court improperly applied the stricter notice requirements of the

Contract pursuant to Section 8 as opposed to the more liberal notice provisions of Section 19(2). According to the Trustee, the notice requirements of Section 8 were not applicable to Hirsch because it "seeks damages on a total cost basis in the nature of quantum meruit." (Appellant Mem. at 12.)

As set forth above, Section 8, entitled "Compensation for Emergency Delays", concerns when the Contractor "is specifically directed by the Engineer to suspend his operations" or "not to start his operations", and "if solely because of such suspension or direction not to start any of the Contractor's or subcontractor's employees or equipment then engaged in such Work are necessarily kept idle at the construction site." The notice requirements under these circumstances are relatively strict—the Contractor must give prompt written notice to the Engineer and furnish to the Engineer, at the end for each day, a memorandum showing the name, payroll title, salary rate and employer of each of the workingmen, and description, owner and claimed rental rate for each item of equipment claimed to have been kept idle, "for the purpose of enabling the Engineer to verify the Contractor's claim at the time." (Contract, § 8.)

On the other hand, Section 19, entitled "Notice Provisions", states that "[n]o claim against PATH shall be made or asserted in any action or proceeding at law or in equity, and the Contractor shall not be entitled to allowance of such claim, unless the Contractor shall have complied with all requirements relating to the giving of written notice and of information with respect to such claims as provided in this numbered clause." (Contract, §19.) The notice requirements under this provision are relatively more lenient. This section explicitly states that "[i]n the case of any claims for . . . idle salaried men and equipment . . . such requirements [of Section 8] shall apply." (Id.) However, for all other types of claims, "notice shall have been given to the Engineer, personally, as soon as practicable, . . . Such information shall be

supplemented with any further information as soon as practicable after it becomes or should

become known to the Contractor, including daily records showing all costs which the Contractor

may be incurring . . ." (<u>Id.</u>)

Once again, the Appellant's arguments in this regard are without merit.  Although Judge

Grossman referenced both notice provisions in the Order, his findings were alternatively

premised on either provision.  In particular, the Bankruptcy Court stated:

> Hirsch argues that its claims fall within clause 2 of Section 19, which contains the
> least stringent notice requirements.  It appears to the Court that some of Hirsch's
> claims would actually fall within Section 8, which applies to delays caused solely
> by PATH, and has more specific notice requirements.  *Even if the notice
> requirements for the catch-all claims apply, Hirsch has not established that it
> provided notice of the delay claims within48 hours of the occurrence of the act in
> question, or that Hirsch provided PATH with daily records of costs, which are
> both required under Section 19.*

(RA-000011) (emphasis added).  Therefore, the Court rejects the Appellant's arguments to the

extent it contends that the Bankruptcy Court improperly held it to the stricter notice standard in

Section 8.  Judge Grossman clearly found that even under the more lenient provisions of Section

19, Hirsch had not sufficiently complied with its obligations to provide notice of its claims.

## D.  <u>As to Whether Substantial Compliance with the Notice Provisions of the Contract was Sufficient</u>

The next issue of contention is, looking solely at the more lenient notice provision of

Section 19 of the Contract, was it proper for Bankruptcy Court to reject Hirsch's arguments that

substantial compliance with this requirement was sufficient.

According to the Trustee, Hirsch did comply with the notice requirements of Contract

§19(2), because the Appellant contends that only substantial compliance—rather than strict

compliance—is necessary.  However, the Bankruptcy Court held that substantial compliance is

sufficient only where "claims have been the subject of sufficient correspondence to make them well known to the contract manager".

Upon a *de novo* review of this legal proposition, the Court finds that Judge Grossman's rejection of substantial compliance with the notice provisions under the circumstances was correct. "Under New York law, '[e]xpress conditions precedent, which are those agreed to and imposed by the parties themselves, must be literally performed.'" Travelers Cas. And Sur. Co. v. Dormitory Auth-State of New York, 735 F. Supp. 2d 42, 75 (S.D.N.Y. 2010) (quoting Klewin Bldg. Co., Inc. v. Heritage Plumbing & Heating, Inc., 42 A.D.3d 559, 840 N.Y.S.2d 144, 145 (2d Dep't 2007)); see D.C.R. Trucking & Evacuation, Inc. v. Aetna Cas. and Sur. Co., No. 96 Civ. 3395, 2002 WL 32096594, at *6 (E.D.N.Y. Oct. 31, 2002) ("Failure to strictly comply with contractual notice and documentation provisions has been held to constitute a waiver of any claim for damages."); Perini Corp. v. City of N.Y., 18 F. Supp. 2d 287, 295 (S.D.N.Y. 1998) ("An 'enshrined principle' of New York law requires strict compliance with notice provisions in general, as recently reaffirmed by the New York Court of Appeals."); see also A.H.A. General Constr. v. New York City Housing Auth., 92 N.Y.2d 20, 33, 677 N.Y.S.2d 9, 16, 699 N.E.2d 368, 375 (1998) (explaining that notice and documentation provisions serve an important public interest in that they "provide public agencies with timely notice of deviations from budgeted expenditures or of any supposed malfeasance, and allow them to take early steps to avoid extra or unnecessary expense, make any necessary adjustments, mitigate damages and avoid the waste of public funds.").

There are a number of New York courts that have dismissed a lawsuit where a contractor seeking extra payment—as is the case here with Hirsch—fails to strictly comply with contractual notice requirements. See Perini Corp. v. City of N.Y., 18 F. Supp. 2d 287, 293 (S.D.N.Y. 1998)

(collecting cases); <u>see, e.g.</u>, <u>Dart Mech. Corp. v. City of N.Y.</u>, 68 A.D.3d 664, 891 N.Y.S.2d 76, 77 (1st Dep't 2009); <u>Fahs Rolston Paving Corp. v. County of Chemung</u>, 43 A.D.3d 1192, 841 N.Y.S.2d 404, 406–07 (3d Dep't 2007); <u>Mezzacappa Bros., Inc. v. City of N.Y.</u>, 29 A.D.3d 494, 815 N.Y.S.2d 549, 549 (1st Dep't 2006); <u>Morelli Masons, Inc. v. Peter Scalamandre & Sons, Inc.</u>, 294 A.D.2d 113, 742 N.Y.S.2d 6, 7 (1st Dep't 2002). Although many of these cases arose in the context of a public construction project, that is not determinative. <u>See Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.</u>, No. 05 Civ. 5155, 2010 WL 144426, at *14 (E.D.N.Y. Jan. 11, 2010) ("Moreover, such rigid compliance with a notice-of-claim provision may be strictly required regardless of whether the contract at issue is one for a private or public construction project.").

Strict compliance with a contractual notice provision is particularly appropriate when the relevant provision expressly states that notice of a claim is a condition precedent to bringing such a claim, and that the consequence of failure to do so is a waiver of the claim. <u>Id.</u>; <u>see Kingsley Arms, Inc. v. Sano Rubin Const. Co., Inc.</u>, 16 A.D.3d 813, 814, 791 N.Y.S.2d 196 (3d Dep't 2005). Here, Section 19 expressly states that "[t]he failure of the Contractor to give such written notice and information as to any claim shall be conclusively deemed to be a waiver by the Contractor of such claim, such written notice and information being conditions precedent to such claims." (Contract, § 19.) <u>See Northgate Elec. Corp. v. Barr & Barr, Inc.</u>, 61 A.D.3d 467, 468–69, 877 N.Y.S.2d 36, 37–38 (1st Dep't 2009) (noting that the "notice clause provide[d] that '[i]n default of such notice the claim is waived'"); <u>Morelli Masons, Inc. v. Peter Scalamandre & Sons, Inc.</u>, 294 A.D.2d 113, 742 N.Y.S.2d 6 (1st Dep't 2002) (observing that the notice clause "specifically provided that the failure to comply with such provision would constitute a waiver of the subcontractor's claim for damages").

In support of its argument that substantial compliance should have been deemed adequate by the Bankruptcy Court, the Appellant relies on Plato General Construction Corp. v. Dormitory Authority of the State of New York, 21 Misc. 3d 1138(A) (N.Y. Sup. Ct. 2008). In that case, under its construction contract Plato/Emco was required to file 15-day notices with estimates of the costs associated with any extra work assignments. The Dormitory Authority of the State of New York ("DASNY") asserted that Plato/Emco did not deliver the relevant verified statements. On the other hand, Plato/Emco claimed that it gave DASNY notice of its claims; in particular, it submitted correspondence showing DASNY's awareness of its claims. In response, DASNY asserted that the notices (1) did not specifically indicate that they were notices of claims under the Contract; or (2) were not precisely the claims that Plato/Emco was pursuing in the litigation. Under this specific set of circumstances, the Plato court found the evidence of DASNY's actual knowledge of the claims to be overwhelming, so that there had been "sufficient correspondence to make [the claims] well known to the contract manager, [so that] complete technical compliance with . . . notice of claim requirements [was] not necessary". Id. at 14.

The Appellant argues that under the ruling in Plato, the Court did not rely solely on the quantity of the correspondence in reaching its conclusion. In other words, the Trustee contends that while evidence of a high volume of correspondence is lacking, the nature of the few instances of communication are sufficient so as to make it "overwhelming" under the Plato precedent. In particular, the Trustee contends that (1) the memorandum dated January 28, 1991, in which PATH outlined eight issues relating to Hirsch and the Project; and (2) the letter dated April 2, 1991, wherein the Port Authority acknowledges that Hirsch has made several claims concerning work that was performed and not called for in the Contract, is sufficient to establish the requisite substantial compliance with the Notice provision pursuant to the Contract.

Initially, the Court does not agree with the Appellant that substantial compliance alone would be sufficient under the notice provisions in the Contract, so that it was an error of law for the Bankruptcy Court to hold the Trustee to a strict standard of compliance. Rather, the Court approves of the Bankruptcy Court's finding, as follows:

> [t]he Trustee's reliance on "substantial compliance" with the notice requirements [set forth in Plato] is misplaced. While courts have made an exception in circumstances where "claims have been the subject of sufficient correspondence to make them well known to the contract manager" the evidence must establish that the owner has knowledge of the claim. . . . In Plato . . . the evidence that the owner was aware of the actual substance of the claims of the contractor was "overwhelming". This is not true in the case before the Court.

In addition, the Bankruptcy Court properly found the Plato case to be distinguishable because the evidence of knowledge in the present case was far from "overwhelming." The January 28, 1991 memorandum demonstrates only that the PATH had knowledge of some of the delays that were affecting Hirsch's work, years before the work was actually completed. However, as the Appellee maintains, knowledge of delays in the instant case is not equivalent to knowledge of Hirsch's *claims*. In any event, even if this demonstrated some knowledge by PATH of potential claims, the work was not completed until three more years had transpired. Thus, it would be illogical for the Bankruptcy Court to find that this memorandum in any way constituted overwhelming knowledge of what were Hirsch's overall claims for recovery.

Secondly, the April 2, 1991 letter states only that it had come to the Port Authority's attention that Hirsch *may* have several claims concerning additional work and that Hirsch should submit those claims as soon as possible. Again, while this may demonstrate some knowledge by PATH of potential claims, this evidence is far from overwhelming and also does not account for the large majority of time during which claims accrued after this letter was sent. Furthermore,

this communication actually indicates that PATH specifically requested Hirsch to submit his claims as he was required to do under the Contract, and there is no indication that there was ever a response.  The contractual notice provision is meant to accomplish the task of specifying details—not merely raising the possibility of vague potential claims in the future.  Thus, a letter from PATH merely stating that Hirsch "may" have claims, cannot support the Appellant's argument of overwhelming evidence so that substantial compliance would be sufficient.  <u>Cf.</u> <u>Abax Inc. v.Lehrer McGovern Bovis, Inc.</u>, 8 A.D.3d 92, 93 (1st Dep't 2004) (finding sufficient correspondence to make the claims well known to the contract manager, so that complete technical compliance was not necessary, where "the documents submitted with respect to those claims show that defendant was afforded sufficient notice of the contractor's intention to file the claims and of the conditions from which they arose, and provided sufficient data to allow a determination of their amount.").

More importantly, in light of the notice provision in the present case which required daily records showing all costs which the Contractor may be incurring or all other circumstances which will affect any claim to be made, the evidence here falls especially short of the "overwhelming" standard espoused in <u>Plato</u>.  The Appellant attempts to argue that the daily record language is in fact not a requirement, highlighting the disjunctive language in the provision.  In particular, Section 19 states:

> In the case of all other types of claim, notice shall have been given to the Engineer, personally, as soon as practicable, and in any case, within 48 hours, after occurrence of the act, omission, or other circumstances upon which the claim is or will be based, stating as fully as practicable at the time all information relating thereto. Such information shall be supplemented with any further information as soon as practicable after it becomes or should become known to the Contractor*, including daily records showing all costs which the Contractor may be incurring or all other*

> *circumstances which will affect any claim to be made*, which
> records shall be submitted to the Engineer, personally.

Thus, according to the Trustee, it needed only show that it furnished PATH with information relating to future claims, including daily records <u>or</u> all other circumstances which will affect any claim to be made, and that this latter provision is ambiguous and must be construed against the drafter. However, the Court does not interpret the contractual notice provision in this manner. What is clearly required under the Contract is that the Contractor provide daily records that show *either* all of the costs that it may be incurring or all other circumstances which would affect a claim to be made. Thus, daily records were required to be furnished as soon as practicable, whether those daily records described the costs or other relevant circumstances. The few instances of correspondence that the Trustee points to, do not come close to being overwhelming in light of the "daily records" requirement. Finally, Judge Grossman's decision to reject the Trustee's reliance on <u>Plato</u> was not erroneous as a matter of law for the simple reason that <u>Plato</u> is neither binding nor persuasive. <u>See also Travelers Casualty and Surety Co. v. Dormitory Autority–State of New York</u>, 735 F. Supp. 2d 42, 75 (S.D.N.Y. 2010), where the District Court specifically rejected its holding and did not follow its reasoning.

Therefore, in light of the legal conclusion that only strict compliance would suffice, the Bankruptcy Court did not reach an erroneous result in finding that such compliance was not established in this case. "Express conditions must be literally performed; substantial performance will not suffice." <u>MHR Capital Partners LP v. Presstek</u>, 12 N.Y.3d 640, 645, 884 N.Y.S.2d 211, 912 N.E.2d 43 (2009). Even under the more lenient notice provision of Section 19, there is no proof in the record that notice was given within 48 hours after occurrence of the act, omission, or other circumstances upon which the claim is or will be based. Nor is there any proof that the information was supplemented with any further information as soon as practicable

after it became or should have become known to the Contractor, including daily records showing all costs which the Contractor may be incurring or all other circumstances which will affect any claim to be made.

Therefore, the Appellant's arguments on appeal with regard to alleged substantial compliance are denied.

## E. As to Whether the Doctrine of Impossibility Should Have Excused Compliance

Finally, the Appellant argues that regardless of what standard it is held to with regard to the notice provisions—strict compliance or substantial compliance—the doctrine of impossibility should have been applied by the Bankruptcy Court so as to find that Hirsch was unable to comply with the notice provision, because it could not calculate damages until substantial completion of the project. In other words, the Trustee maintains that due to the delays running concurrently with each other, no daily records relatedly solely to Hirsch's cost of the delay were kept nor could be kept, so that keeping "daily records of all costs", as required under §19(2), was an impossibility.

In support of this contention, the Appellant cites to <u>Vanderline v. City of Rochester</u>, 54 A.D.2d 155, 157, 388 N.Y.S.2d 388 (4th Dep't 1976), where the Appellate Division found that a provision requiring written notice within 5 days after a claim had arisen stating the amount of the damages sustained as a condition precedent to making a claim was a condition that was impossible to meet until the damages are, or reasonably should have been, ascertained.

As an initial matter, the Court need not even address the defense of impossibility to compliance with the notice requirement because it was not raised in the prior proceedings. <u>See</u> <u>In re McKenna</u>, 238 F.3d 186, 187 (2d Cir. 2001) ("For the first time on appeal, Vesta makes an argument regarding Section 116(3) of the Australian Insurance Act of 1973. Vesta's failure to

raise its argument based upon Section 116(3) at the bankruptcy court level and the district court level constitutes waiver."); In re DBSD North Am., Inc., 427 B.R. 245, 255 (S.D.N.Y. 2010) ("Sprint's argument on this point of statutory construction constitutes a new argument on appeal. Sprint did not present this argument to the Bankruptcy Court. Thus, Sprint has waived this argument."); Educational Credit Mgmt. Corp. v. Curiston, 351 B.R. 22, 28 (D. Conn. 2006) ("The Court sees no manifest injustice in denying ECMC the opportunity to raise for the first time on appeal an issue that it clearly could have discovered and could easily have raised before the Bankruptcy Court.").

However, even if the Trustee had raised this argument to the Bankruptcy Court, the Court does not find it to be persuasive. While it may have been impossible for Hirsch to calculate its precise costs on a day-to-day basis due to a difficulty in untangling certain costs from others, this does not excuse the Contractor from making at least a minimum effort to furnish PATH with supplemental information on a consistent basis as the delays were occurring. While the Court makes no determination as to whether an approximation of costs alone would suffice, certainly it was within Hirsch's ability to provide some sort of daily report. This is especially true in light of the Bankruptcy Court's factual finding—not clearly erroneous—that the information regarding the reasons and length of delays were not solely within PATH's knowledge and control. Therefore, the Court finds that it was not an error of law for the Bankruptcy Court to effectively require "contemporaneous recordings" of the Trustee's damages.

Therefore, this final argument as to the doctrine of impossibility, raised by the Appellant for the first time on appeal, is denied.

### III. CONCLUSION

For the foregoing reasons, it is hereby:

ORDERED, that the court affirms the order of the Bankruptcy Court granting PATH's

motion for summary judgment dismissing the Trustee's complaint; and it is further

ORDERED, that the Clerk of the Court is respectfully directed to mark this case as

closed.

**SO ORDERED.**
Dated: Central Islip, New York
August 3, 2012


_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge